## Dublino v. Natale (et ux., Appellant).

Argued April 16, 1935.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADT-FELD, PARKER, JAMES and RHODES, JJ.

*Fred B. Trescher,* of *Kunkle, Walthour & Trescher,* for appellant.

*R. Edward Best,* of *Smith, Best & Horn,* for appellee.

OPINION BY PARKER, J., July 18, 1935:

This is an action in assumpsit by John Dublino against Michael Natale and Anna Natale, his wife, for necessaries furnished to the family of the defendants. A statement of claim having been filed, the wife by an affidavit of defense denied that the goods were furnished at her special instance or request or that she

made any agreement or contract for the purchase and sale of the merchandise or for the payment of the same; the husband offered no defense. A jury trial was had, and at the conclusion thereof, the trial court gave binding instructions for the plaintiff against both defendants, and the wife has appealed. We are all of the opinion that the plaintiff was not entitled to binding instructions.

The plaintiff depended upon oral testimony to make out a case against the wife. Consequently, at the conclusion of the plaintiff's evidence, if defendants had offered no testimony, binding instructions should not have been given for the plaintiff: Nanty-Glo Boro. v. Amer. Surety Co., 309 Pa. 236, 163 A. 523. The court below in giving binding instructions and the appellee in his argument depended upon the testimony of the wife, Anna Natale, to support the judgment, contending that the defendant by her testimony admitted liability and that there was no question for the jury. The plaintiff had offered evidence tending to show that during the time the bill was being run and at various times when goods were received, the wife promised to pay the existing bill. The testimony of the wife upon which the parties rely was as follows: "Q. What did Dublinos ask you to do, if anything? A. They wanted us to pay our store bill, and I said as soon as my husband could pay it, he would pay it ...... Q. How frequently would the matter of the balance of this bill be discussed with you when you would make the payments, every time? A. Not every time, if I pay satisfactory it was all right, if I couldn't they would get mad. Q. They would ask you when you would pay more? A. I said, 'I try to do my best, if he would get a bonus, or the bank would open up and I could get a loan on my property,' I promised I would pay my bill." Even with this testimony, binding instructions were not warranted.

"A wife purchasing necessaries for her family is presumably acting as her husband's agent, but that presumption is overcome when she specifically contracts in her own name and the credit is given to her;" Strawbridge & Clothier, Inc. v. Shecter, 92 Pa. Superior Ct. 61, 63. "There is a presumption, when a wife buys necessaries for the family of her husband and herself, she is acting as his agent because the burden is on him as a primary duty of furnishing and paying for such articles ...... To shift this responsibility to the wife and to make her estate liable for necessaries the burden is on the creditor to show that she assumed by an express agreement the responsibility which the law cast on her husband": McCreery v. Scully, 67 Pa. Superior Ct. 524. Also, see Moore v. Copeley, 165 Pa. 294, 30 A. 829; Sawtelle's Appeal, 84 Pa. 306, 310.

At best, a portion of the bill must have been contracted before the promises of the wife were made. In Berger v. Clark, 79 Pa. 340, 345, the Supreme Court said: "It is a necessary consequence of the decided cases that she must contract in her own behalf. The evidence must as clearly prove this as the pleading must aver it. The primary presumption, when a wife takes up necessaries for the family of her husband and herself, is, that she is acting as his messenger or agent, for on him lies the primary duty of furnishing and paying for them. The evidence must overcome this presumption and satisfy the jury that she is acting in her own right, in order to bind her separate estate. There was no such evidence here, and hence the plaintiff endeavored to make out his case by her subsequent declarations, to which exceptions were taken. But a wife cannot be made liable for necessaries by subsequent declarations alone, without primary evidence of facts tending to raise a contract to bind her separate estate. Her subsequent declarations may be corroborative, but cannot alone stand for full proof, without subjecting

her to the very dangers it is the purpose of the law to avoid. Even her subsequent promise to pay for necessaries procured by her husband, and for which he alone is liable, would not come within the intention of the law. It would be simply a promise to pay the debt of another, and as to her would be *nudum pactum*."

It we are to sustain the order of the court below, it must be after viewing the evidence and reasonable inferences to be drawn therefrom in a light most favorable to the defendant, the appellant here. So viewing the testimony, it was not for the court to say whether the wife's testimony should be interpreted as a promise to pay the plaintiff's bill from her own funds. She was a foreigner who apparently was not able to use accurate and precise language. The meaning that she intended to convey and did convey may have been that she was a messenger for her husband, acting for him, and that when the money was available from him she would bring it to the plaintiff. At one time she stated that the husband would pay the bill as soon as he could and at another time that she would do her best and, if he got a bonus or the bank would open or she could get a loan on her property, she promised she would pay her bill. This of itself did not warrant binding instructions. The case must be tried again when it can be determined whether the evidence is sufficient to submit to a jury in the light of the facts as then presented.

Judgment of the court below is reversed with a venire facias de novo.