# McCullough *v.* National Bank of Union City et al., Appellants.

Argued April 14, 1937.

Before Keller, P. J., Cunningham, Baldrige, Stadtfeld, Parker, James and Rhodes, JJ.

*W. Pitt Gifford,* of *Gunnison, Fish, Gifford & Chapin,*

with him *W. O. Morrow* and *Maurice J. Coughlin,* for appellants.

*Gerald A. McNelis,* with him *Reed & Spofford,* for appellee.

OPINION BY STADTFELD, J., July 15, 1937:

This is an action in assumpsit, brought by the plaintiff, Dora E. McCullough, to recover $800 and interest thereon, being the amount of a deposit in her name in The National Bank of Union City, Erie County, which the bank appropriated on the 9th of June, 1932, to apply upon a defaulted note held by the bank and signed jointly by plaintiff and her husband. There were repeated renewals of the jointly signed note, both before and after the appropriation referred to. She alleged that she was only an accommodation maker and never received any of the proceeds of such note.

The National Bank of Union City was closed at the time of the Bank holiday in March 1933, and went into liquidation. A little more than a year later, April 6, 1934, a new bank, National Bank of Union City, was organized, which is also made a co-defendant, plaintiff alleging, on information and belief, that the new bank had purchased certain of the assets of, and assumed certain of the liabilities of the closed bank. It was admitted in the affidavit of defense that the new bank assumed the payment of "known existing liabilities" to the amount of 60%.

The trial resulted in a verdict for the amount claimed for the plaintiff, $800 and interest. Rules granted on motions for a new trial and for judgment n. o. v. were discharged by the court in banc, HIRT, P. J., and KITTS, J., but the amount of the judgment directed to be entered against the new bank was reduced to sixty percent. of the amount of the verdict, or $480 and

interest. From the judgment so entered against the defendants, this appeal was taken.

The only assignment of error relates to the refusal to enter judgment non obstante veredicto. The dispute lies within very narrow grounds.

According to the admissions of the plaintiff on the witness stand, she began signing notes and renewals thereof jointly with her husband to The National Bank of Union City as far back as 1908, and she signed as many as fifty renewal notes.

According to the evidence of James E. Gillette, former cashier of the closed bank, testifying from the records of the bank, it appears that on April 8, 1912, Dora and Ross McCullough, plaintiff and her husband, signed and delivered a note jointly to the bank in the sum of $1,342.63. The note was repeatedly renewed as it matured, in ordinary course, and on May 5, 1932, it was renewed in the sum of $1,030 or thereabouts to which amount it had been reduced. At that time Dora McCullough had a deposit in the bank amounting to $800, and on June 9, 1932, the note being then past due, the bank applied the $800 deposit upon the note and so notified her. She made no response. Subsequently, she signed a renewal for the balance of the note, $235 on June 13, 1932, although the note having become due on June 4th, the renewal was dated back to that date. She joined her husband in a further renewal for $235.15, on October 4, 1932, and again on January 3, 1933, for $135.15, $100 having been paid. The bank was closed for the bank holiday on February 28, 1933 and did not reopen, and nothing has been paid since.

We may assume the correctness of the charge of the trial judge to the jury, as no correction was asked, nor any but a general exception taken thereto, when he stated: "She (plaintiff) does not say that she went to the bank and told any officer of it, that she was

merely an accommodation endorser; and the burden is upon her, members of the jury, to prove by a fair preponderance of the evidence, her contention in this case."

That a married woman's note is presumably valid and that the burden is upon her to prove that she signed the note as surety or as an accommodation maker, is supported by numerous authorities in Pennsylvania. See *Yeany v. Shannon*, 256 Pa. 135, 100 A. 527; *Newtown Title & Trust Co. v. Underwood*, 317 Pa. 212, 177 A. 27; *Farmers & Merchants Bank v. Donnelly*, 247 Pa. 518, 93 A. 761; *Algeo v. Fries*, 24 Pa. Superior Ct. 427; *Atkins v. Grist*, 44 Pa. Superior Ct. 310; *Bank v. Poore*, 231 Pa. 362, 80 A. 525; *Spott's Estate*, 156 Pa. 281, 27 A. 132.

We believe that it necessarily follows that up until the time that the plaintiff established in this suit, her contention that she was surety for her husband on their joint notes, her claim for the return of her $800 deposit which the old bank had applied on their defaulted note, was at most only a possible or contingent liability.

The important and controlling question in this case, however, insofar as the new bank is concerned, is whether plaintiff's claim was a "known existing liability" of the old bank and assumed to any extent by the new bank when the latter opened for business on April 6, 1934.

The contract between the old bank, the new bank, and the trustees, was not offered in evidence at the trial and is not part of the record. However, it was alleged in the fourth paragraph of the statement of claim that: "The defendant, National Bank of Union City, with principal office at Union City, Pennsylvania, is the successor to The National Bank of Union City, and has purchased certain of the assets of, and assumed certain of the liabilities of The National Bank of Union City, according to plaintiff's information and belief."

The fourth paragraph of the affidavit of defense set forth that: "The defendant, National Bank of Union City, Union City, Pa., is the successor of The National Bank of Union City and has taken over certain assets and assumed the payment of all *known existing liabilities* of The National Bank of Union City to the amount of 60%." (Italics supplied).

These corresponding paragraphs in the statement of claim and affidavit of defense were offered in evidence and appear to be the sole basis for any alleged liability on the part of the new bank.

As to the meaning of the words "known existing liabilities" there can be no serious question.

In 35 Corpus Juris, 917: "known" is defined as familiar, perceived, recognized, understood.

"Existing" carries the implication of having existence now.

"Liability" is defined in Black's Law Dictionary to be legal responsibility; in Webster, as the state of being bound or obliged in law or justice; and in Bouvier's Law Dictionary as the state of one who is bound in law and justice to do something which may be enforced by action.

It would be doing violence to the plain meaning of this language, to hold that the plaintiff's claim, based upon an averment that she was not liable upon a joint note with her husband, because she was surety for him, which had not even been asserted, much less proven or established at the time the new bank was opened, was a known, that is a recognized and understood, then existing liability, that is a legal responsibility, of the old bank.

As to the new bank, plaintiff's claim was not a "known existing liability" of the old bank until she had established that she was surety or accommodation maker for her husband on the notes which she had

jointly signed and repeatedly renewed with him. That was not done until April 23, 1936, when judgment was entered in her favor, more than two years after the new bank was organized and from that judgment, this appeal was taken. At the time the new bank was organized and assumed 60% of the "known existing liabilities" of the old bank, the latter held the joint note of plaintiff and her husband, and for several years, plaintiff apparently acquiesced in the application by the old bank of her deposit of $800 upon this note which was subsequently renewed and payments made thereon, and which note, under the authorities referred to supra, was as to her a prima facie, valid obligation.

The assumption by the new bank was not 60% of all liabilities of the old bank that might then exist or thereafter appear, but only of all the liabilities of the old bank then known and recognized to be in existence as such.

As to the new bank, we are of the opinion that there was no assumption by it as to any part of plaintiff's claim. As to it, the judgment is reversed and now entered in its favor.