First National Bank of Verona, for use, *v.* Walsh, Admrx., Appellant.

Argued March 23, 1944.  Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and HUGHES, JJ.

*A. M. Oliver*, with him *Ellis R. Defibaugh*, for appellant.

*Gifford K. Wright*, of *Alter, Wright & Barron*, for appellees.

OPINION BY MR. JUSTICE HORACE STERN, April 20, 1944:

As some misunderstanding apparently persists in regard to the liability of a married woman on a negotiable instrument of which she is an accommodation maker or endorser the present case invites an attempt to clarify the law on that subject. It would seem that the confusion is due to a failure to distinguish between liability on the note itself and liability with respect to a judgment obtained or confessed on the note.

W. O. Lashell and Elizabeth H. Lashell, his wife, executed a judgment note dated February 13, 1932, to the First National Bank of Verona, Pennsylvania, in the sum of $2,035, payable thirty days after date. It was the last of a long series of renewals, the original note having been executed in 1930. On April 21, 1936, the receiver of the bank entered judgment against the parties, but, as far as the record discloses, no notice of this action was given to Mrs. Lashell nor was any demand ever made on her for payment of interest or principal. According to Lashell the money obtained on the note was credited by the bank to his account and none of it was ever received by his wife. She died on May 20, 1940. On March 6, 1941, the receiver issued a writ of scire facias against the Lashells and on April 18, 1941, entered judgment against the husband. On October

25, 1941, he issued a sci. fa. against Phyllis Walsh, administratrix c. t. a. of the wife's estate, to continue the lien of the judgment entered against the decedent in 1936. On December 17, 1941, Phyllis Walsh, administratrix, obtained a rule to show cause why that judgment should not be opened. The rule was made absolute, and at the trial of the issue (Phyllis Walsh, administratrix, having been substituted as defendant) the jury concluded that Mrs. Lashell had signed the note for the accommodation of her husband and accordingly found a verdict in favor of defendant, but the court granted plaintiff's motion for judgment n. o. v. and entered judgment for the amount of the note with interest.

The Act of June 8, 1893, P. L. 344, section 2, provides that a married woman "may not become accommodation endorser, maker, guarantor or surety for another". This does not grant her any choice or discretion, but is an absolute interdiction of her acting in any of the capacities referred to. The purpose of the legislation is to prevent her from yielding to the temptation to assist others, especially her husband, with her own financial resources, even though such protection may be unwelcome and run counter to her earnest desires; it represents the remnant of a public policy rooted in an almost immemorial past. "The law, in forbidding a married woman to become surety for another, protects her not only against others who may importune her to become their guarantor or surety—it protects her even against herself.": *Sears v. Birbeck*, 321 Pa. 375, 387, 184 A. 6, 11. See also *Murray v. McDonald*, 236 Pa. 26, 29, 84 A. 579, 580.

As the law denies to a married woman the power to enter into such an obligation it necessarily follows that a note signed by her as an accommodation maker or endorser is, as to her, utterly void. "The validity of every contract, whether in the form of negotiable paper or otherwise, is dependent upon the capacity of the parties thereto to contract. Unless the requisite capacity

exists, the contract is unenforceable against the purported obligor, regardless of the situation of the party seeking enforcement. . . . The absence of capacity nullifies the attempted contract at the outset, and no act of another party, no bona fides on his part, can give vitality to it—certainly when against the interest or will of the defendant": 8 Am. Jur. 327, section 613. The renewal, therefore, of an accommodation note creates no greater liability of the wife than the original note,[1] for obviously she cannot, through any alleged estoppel, defeat the purpose of the statute. The doctrine of estoppel has no application to the case of a party incapable of making a contract. The court below was mistaken in concluding that decedent could acquire the capacity of an effective accommodation maker or endorser by the simple expedient of renewing an original note which was itself void. Nor is a married woman barred from asserting her incapacity by the fact that she falsely certified on the face of the note that it was given for her own benefit and not as accommodation for another: *Murray v. McDonald,* 236 Pa. 26, 84 A. 579; there the court said (p. 30, A. p. 581): "Unless the principle here asserted is to prevail in cases like the present, the statutory prohibition against a married woman becoming surety for her husband would be of no effect, and the policy of the law in this regard liable to circumvention by flimsiest device." So likewise her paying interest on such a note would not estop her, for "if in signing this note she attempted to assume an illegal obligation, no subsequent act of hers in respect to it could make it legal": *Sears v. Birbeck,* 321 Pa. 375, 386, 184 A. 6, 11.

While it is thus clear that a married woman's signature to a note as an accommodation maker or endorser

---

[1] This is analogous to the principle that if a note is given without consideration a renewal note is open to the same defense and does not become enforceable on any theory of waiver or estoppel: *First National Bank of Williamsburg v. Smith,* 132 Pa. Superior Ct. 73, 80, 81, 200 A. 215, 218, 219,

is of no validity, it must be remembered that she may properly make or endorse a note other than by way of accommodation, and as the Act of 1893 makes her capacity the rule and her incapacity the exception the presumption in every case is that her note is valid and the burden is on her to prove that she acted as an accommodation party: *Bank v. Poore,* 231 Pa. 362, 365, 80 A. 525, 526; *Yeany, to use, v. Shannon,* 256 Pa. 135, 139, 100 A. 527, 529; *Newtown Title & Trust Co. v. Underwood,* 317 Pa. 212, 177 A. 27; *McCullough v. National Bank of Union City,* 127 Pa. Superior Ct. 452, 456, 193 A. 65, 66. For this reason the defense of incapacity does not operate automatically but must be asserted as in every other case of alleged incapacity or illegality or want of consideration. Accordingly, if an action is brought on the note and the wife fails to defend, or presents her defense unsuccessfully, so that judgment is obtained against her, she is bound thereby in the same manner and to the same extent as every defendant is concluded by an adverse judgment; see *Littster v. Littster,* 151 Pa. 474, 25 A. 117. For the same reason also, if a judgment on the note is entered against her by confession it is presumptively valid, and, unlike the note itself, is not void but only voidable, and like all other judgments cannot be collaterally attacked. "A note or other obligation given by a married woman is now presumed to be valid, and, if she alleges that it is invalid, the burden is upon her to show that it comes within the exceptions to her right to contract made in the statute. It follows, and we have so held, that a judgment confessed by a married woman is no longer prima facie void; at most, it is voidable, and on her application may be set aside only when it appears to have been unauthorized by the act": *Bank v. Poore,* 231 Pa. 362, 365, 366, 80 A. 525, 526. If she petitions to have a confessed judgment opened in order to enable her to assert her defense of incapacity, as she has a right to do, she must proceed without laches just as in

the case of any other judgment: *Wilkes-Barre Deposit & Savings Bank v. Hermann,* 334 Pa. 560, 6 A. 2d 496. In short, therefore, while a note is void as to a married woman who signs or endorses it as an accommodation party, once it is transmuted into a judgment against her that judgment is final if rendered adversely, and is presumptively valid, though voidable, if entered by confession.

The question then arises: was there laches in the present case? Plaintiff relies upon *Wilkes-Barre Deposit & Savings Bank v. Hermann,* 334 Pa. 560, 6 A. 2d 496, where it was held that the wife's delay in petitioning for the opening of the judgment against her prevented her from obtaining relief. There, however, in addition to the passing of more than twelve years and the execution by the wife of two amicable sci. fa.'s, it appeared that the most important witnesses who could have testified as to whether or not she had acted as an accommodation party were dead or unavailable so that the bank which was the payee of the note was gravely prejudiced. Here the facts are quite different. In the four years intervening between the time when the bank entered judgment on the note and the time of her death Mrs. Lashell apparently had no knowledge of the entry of the judgment, and when, a year and a half thereafter, a scire facias issued against the administratrix of her estate the latter promptly started the present proceedings to open the judgment. The bank was not harmed in any way by the lapse of time that ensued after the entry of the judgment.

The court below entered judgment for plaintiff n. o.v. on the ground of estoppel and laches; its action was erroneous and must be reversed. However, in dismissing plaintiff's motion for a new trial it stated that it did so for the reason that judgment n. o. v. had been granted. It should be given the opportunity to pass upon the merits of that motion.

The order entering judgment for plaintiff n. o. v. is reversed; plaintiff's motion for a new trial is reinstated, and the record is remanded for such action in regard thereto as the court below may deem proper; costs to abide the event.