## Harrisburg Medical Managment Inc. v. Arnold

*Bradford Dorrance,* for plaintiff.
*David L. Lutz,* for defendants.

OLER, *J.,* August 4, 1995—This case is before the court on a preliminary objection of defendant Jack Arnold, defendant-husband, in the nature of a demurrer to a complaint filed by Harrisburg Medical Management Inc., plaintiff. The complaint is based upon an alleged breach of duty on the part of defendant-husband and defendant Charlene Arnold, defendant-wife, to pay for certain medical services provided by plaintiff to defendant-wife.

The preliminary objection of defendant-husband to plaintiff's complaint is based upon the proposition that a husband cannot be liable for medical costs incurred by his spouse where he was not a party to the contract between the provider and his spouse and where he did not himself receive any medical services. For the reasons stated in this opinion, the preliminary objection will be denied.

## STATEMENT OF FACTS

The pertinent allegations of plaintiff's complaint are as follows: Plaintiff is a Pennsylvania corporation which trades and does business as the Capital Recovery Center.[1] CRC is an outpatient rehabilitative facility located at 3514 Trindle Road, Camp Hill, Cumberland County, Pennsylvania.[2] Plaintiff's registered office and principal place of business is located at 409 South Second Street, Harrisburg, Dauphin County, Pennsylvania.[3] Defendants are a married couple residing at 300 Ridge Road, Etters, York County, Pennsylvania,[4] with "express, implied, or apparent authority to obligate one another for the payment of CRC's services."[5]

The first count of plaintiff's complaint is entitled "in contract." It alleges that on November 12, 1990, defendant-wife signed CRC's standard agreement;[6] that under this agreement "the Arnolds agreed to assign all insurance payments to CRC to cover the cost of

1. Plaintiff's complaint, paragraph 1.
2. *Id.*
3. *Id.*
4. Plaintiff's complaint, paragraph 2.
5. *Id.*
6. Plaintiff's complaint, paragraph 4.

rehabilitative and other medical services provided to" defendant-wife;[7] that "defendants further promised under the agreement to be personally responsible for any CRC services not covered by insurance;"[8] and that CRC fulfilled its obligations under the agreement and provided medical services to defendant-wife.[9] The count further alleges that, after application of any insurance payments and other credits, a balance of $10,004.16 remains unpaid on defendants' account,[10] and that, despite plaintiff's repeated requests, defendants have not paid CRC's claim.[11] The written agreement allegedly executed by defendant-wife was inadvertently omitted from plaintiff's complaint as filed, but appears in the preliminary objection of defendant-husband.[12]

The second count of plaintiff's complaint is entitled "implied-in-fact contract." It avers the existence of an implied-in-fact contract between the parties based on their oral and written representations and conduct,[13] whereby defendants implicitly promised to pay plaintiff for medical services and to assign any insurance benefits to plaintiff.[14]

---

7. *Id.*

8. *Id.*

9. Plaintiff's complaint, paragraph 5.

10. Plaintiff's complaint, paragraph 6.

11. Plaintiff's complaint, paragraph 8.

12. See *Martin v. Commonwealth, Department of Transportation,* 124 Pa. Commw. 625, 629, 556 A.2d 969, 971 (1989) (permissibility of annexing written agreement relied upon by plaintiff to preliminary objection); *Riley v. Taubman,* no. 95-1196 equity term (Cumberland Co.) (July 6, 1995) (Hess, J.).

13. Plaintiff's complaint, paragraph 10.

14. Plaintiff's complaint, paragraphs 11-12.

The third count of plaintiff's complaint is entitled "quantum meruit/unjust enrichment." It avers that defendants "wrongfully secured or passively received" benefits of plaintiff's services,[15] and seeks restitution for the reasonable value of services provided to defendant-wife.[16]

Plaintiff, in its brief in opposition to the preliminary objection at issue herein, adds the following factual statement:

"Charlene and Jack Arnold arbitrated their underinsured motorist claim. By arbitration award dated June 13, 1994, the arbitrators determined that the total underinsured motorist limits available to Charlene *and* Jack Arnold was $300,000. See arbitration award, attached as appendix 'A.' Several months later, the arbitrators molded an underinsured motorist award of $202,700 in favor of the Arnolds and against the responsible insurer, AETNA Insurance Company. Despite their agreement to assign all insurance proceeds to CRC, the Arnolds have refused to reimburse CRC from the proceeds of their arbitration award."[17]

This allegation does not appear in plaintiff's complaint and cannot be considered in the disposition of defendant-husband's preliminary objection.[18]

---

15. Plaintiff's complaint, paragraph 17.

16. Plaintiff's complaint, paragraph 16.

17. Plaintiff's brief in opposition to defendants' preliminary objections, at 2. (footnote omitted) (emphasis in original)

18. See *Rubin v. Nowak,* 367 Pa. Super. 629, 634-35 n.5, 533 A.2d 451, 453 n.5 (1987).

## DISCUSSION

In testing the sufficiency of a cause of action as pled, a court must accept as true all relevant facts which are well pleaded and all reasonable inferences flowing therefrom. *Nan Duskin v. Parks,* 11 D.&C.3d 299 (Phila. Co. 1978). A demurrer will be sustained only in a case that is clear and free from doubt and where it appears with certainty that upon the facts averred the law will not permit recovery by the plaintiff.[19] "If any part of a pleading states a sufficient cause of action, the demurrer to the pleading must be overruled." 2 Anderson, Pennsylvania Civil Practice §1017.180, at 579 (1976).

With respect to the liability of a husband for obligations of his spouse, the common-law doctrine of necessities in Pennsylvania has been stated as follows:

"A husband is under a legal duty to support his wife and children, and where he neglects this duty, one who supplies necessaries for their support may recover their cost in an action under the common law, which raises an implied promise, on the part of the husband, to pay."[20]

Although the passage of the Equal Rights Amendment to the Pennsylvania Constitution would appear to require a modification of the doctrine to include wives as potential obligors, if the doctrine is not to be abrogated, several courts have so modified it.[21] A strong argument

19. *Landfair v. Balph,* 21 Mercer Co. L.J. 278, 279 (1985).

20. *Hamot Medical Center v. Fink,* 6 Fiduciary Rep. 2d 302, 303 (Crawford Co. 1986).

21. See *e.g., Hamot Medical Center v. Fink, supra; Landfair v. Balph, supra; Park Avenue Hospital v. Klees,* 20 D.&C.3d 124 (Northumberland Co. 1981); but see *Nan Duskin v. Parks, supra; Albert Einstein Medical Center v. Nathans,* 27 Fiduciary Rep. 561 (Phila. Co. 1977).

can be made supporting this expansion of the common-law rule. Pennsylvania courts that have expanded the doctrine have borne in mind its underlying rationale:

"The common-law rule was not so much that the husband must pay . . . but that *someone* from the financial unit must pay . . . . The concern that *someone* must pay is just as legitimate today . . . ." [22]

In extending the common-law doctrine, Pennsylvania courts have also cited the principle that "[m]arriage creates a single financial unit." [23] "The reasonable expectations of the marital partners and their creditors are that each partner's income and assets are held for the benefit of the marital partnership." [24] Thus, "[w]hen a spouse is supplied with the necessaries of life, his or her marital partner is also benefitted, and therefore, both ought to be liable for them." [25]

As a general rule, in extending the common-law doctrine to preserve it, Pennsylvania courts have held that "the spouse who incurs the necessities is primarily liable, and the other spouse is secondarily liable for said necessities."[26]

An extension of the common-law doctrine of necessities to impose the same rights and burdens upon both marital

---

22. *Park Avenue Hospital v. Klees, supra* at 130. (emphasis in original)

23. *Hamot Medical Center v. Fink, supra* at 306.

24. *Id.*

25. *Park Avenue Hospital v. Klees, supra* at 130.

26. *Landfair v. Balph, supra* at 280; see also, *Hamot Medical Center v. Fink, supra* (holding husband's estate primarily liable, and widow secondarily liable, for medical care furnished to husband); *Park Avenue Hospital v. Klees, supra* (holding each spouse primarily responsible for necessaries furnished himself or herself and secondarily liable for those furnished his or her marital partner).

partners would be consistent with appellate court holdings under the ERA in analogous factual situations.[27]

## APPLICATION OF LAW TO THE FACTS

Based upon the foregoing, the court cannot say as a matter of law, and with certainty, that no recovery on the part of plaintiff is possible against defendant-husband for medical services provided to his spouse. For this reason, the following order will be entered:

## ORDER

And now, August 4, 1995, after careful consideration of the preliminary objection of defendant Jack Arnold in the nature of a demurrer to plaintiff's complaint, and for the reasons stated in the accompanying opinion, the preliminary objection is denied.

---

27. See *e.g., Hopkins v. Blanco,* 457 Pa. 90, 320 A.2d 139 (1974) (holding, under Equal Rights Amendment, that wife should be allowed to recover for loss of consortium); *Henderson v. Henderson,* 458 Pa. 97, 327 A.2d 60 (1974) (holding that statute providing for alimony pendente lite, counsel fees and expenses to wife plaintiff also requires similar right to be afforded husband); *Swidzinski v. Schultz,* 342 Pa. Super. 422, 493 A.2d 93 (1985) (holding that, when deceased husband's estate is insufficient to pay his funeral expenses, those expenses are chargeable to surviving wife).